# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Qing Tian, *et al.*,

    Plaintiffs,

v.

United States of America, *et al.*,

    Defendants.

Case No. 1:15cv264

Judge Michael R. Barrett

## **OPINION & ORDER**

This matter is before the Court on cross motions for summary judgment filed by the parties. (Docs. 28, 29). This matter is now fully briefed and ripe for review.

## I. BACKGROUND

Plaintiff, David Swartz, an American citizen, married Qing Tian, a native and citizen of China on February 2, 2008. (AR[1] 390). On November 14, 2008, Swartz filed a spousal visa petition ("I-130 Petition") on Tian's behalf with the United States Citizenship and Immigration Services ("USCIS"). (AR 356-57). On June 11, 2009, USCIS interviewed Swartz and Tian. (AR 304-05). Despite finding Swartz's and Tian's marriage to be *bona fide*, USCIC nevertheless issued a Notice of Intent to Deny ("NOID") on June 24, 2009. (AR 299-303). The NOID explained Tian was an ineligible beneficiary under 8 U.S.C. § 1154(c) because her previous marriage to Johnnie Smith was deemed to be fraudulent. (AR 299-302). Swartz submitted a letter through his counsel in response to the NOID. (AR 284,293). On April 29, 2010, USCIS denied the I-130 Petition, finding Tian ineligible for a spousal visa. (AR 283-84).

---

[1] The Administrative Record (Doc. 16) was filed on October 15, 2015. For the sake of brevity, the Administrative Record is cited to as "AR" with the corresponding page number.

On October 28, 2011, Swartz filed a second I-130 Petition on Tian's behalf. (AR 102). USCIS conducted two separate interviews with Swartz and Tian in connection with the second I-130 Petition. (AR 75-78, AR 52-53). On July 2, 2014, USCIS issued a NOID as to the second I-130 Petition, once again finding Tian's previous marriage to Smith had been entered into for the purpose of evading immigration laws. (AR 28-33). Swartz responded to the NOID on August 1, 2014. (AR 22-27). On January 9, 2015, USCIS denied the second I-130 Petition. (AR 11-21).

Plaintiffs' filed this action challenging the denial of the second I-130 Petition under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, *et seq.*, and the Fifth Amendment Due Process Clause. (Doc. 1 at ¶¶ 49-57).

## II. STANDARDS

### A. Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

The summary judgment standard, however, is not applicable to judicial review of an agency's actions under the APA. *Alexander v. Merit Sys. Protection Bd.*, 165 F.3d 474, 480-81 (6th Cir. 1999). As the Sixth Circuit explained, review of agency action is limited to consideration of evidence in the administrative record. *Id.* at 480. Accordingly, summary

2

judgment is appropriate in this context when it "serves as the mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Singh v. Johnson*, No. 15-cv-12957, 2016 WL 3476701 (E.D. Mich. June 27, 2016), at *3 (citation omitted).

### B. Administrative Procedure Act

District Courts have jurisdiction to review a decision on the merits of an I-130 petition pursuant to Section 702 of the APA. *Bangura v. Hansen*, 434 F.3d 487, 497, 501-02 (6th Cir. 2006). The APA provides in relevant part "the reviewing court shall hold unlawful and set aside agency action, findings and conclusions of law found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). The standard of review is deferential to the agency's decision. *Bangura*, 434 F.3d at 502 (citing *Carabell v. U.S. Army Corp. of Eng'rs*, 391 F.3d 704, 707 (6th Cir.2004); *Northeast Ohio Reg. Sewer Dist. v. Env't Prot. Agency*, 411 F.3d 726, 731 (6th Cir.2005). The Sixth Circuit further explained in *Bangura*:

> A court may not set aside or hold unlawful an agency action unless that action is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A); *see also Carabell,* 391 F.3d at 707; *N.E. Ohio Reg. Sewer Dist.,* 411 F.3d at 731. An agency decision is arbitrary and capricious if the agency fails to examine relevant evidence or articulate a satisfactory explanation for the decision. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 42–43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). The reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Id.* at 43, 103 S.Ct. 2856. However, "[e]ven when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned." *Alaska Dep't of Env't Conservation v. EPA,* 540 U.S. 461, 497, 124 S.Ct. 983, 157 L.Ed.2d 967 (2004).

In other words, a court is not permitted to reweigh the evidence nor may a court substitute its judgment for that of the agency's judgment. *See Adi v. United States*, No. 1:10CV502, 2011 WL

9613, at *5 (N.D. Ohio Jan. 3, 2011) (aff'd *Adi v. U.S.*, 498 Fed.Appx. 478 (6th Cir. 2012)).

## III. ANALYSIS

### A. USCIC's Factual Findings

With respect to the second I-130 Petition, USCIS made in relevant part the following factual findings. Tian was admitted to the United States on October 28, 2005, as a visitor for business or pleasure for the purpose of viewing firefighting equipment. (AR 2). On November 16, 2005, Tian married Johnnie Smith, a United States citizen. (Id.). Tian had never met or communicated with Smith prior to entering the United States a few weeks earlier. (Id.). When they got married, Tian was 39 years old and Smith was 57 years old. (Id.). On November 27, 2005, Tian returned to China where she remained for six months, apparently because she broke her leg while she was there. (AR 3,6). Tian returned to the United States on May 21, 2006, again as a visitor, indicating her entry was for business. (Id.).

On July 9, 2006, Smith filed an I-130 Petition on behalf of Tian. (Id.). In the I-130 Petition and the I-485 petition, which Smith filed concurrently, they listed their mutual address as Kenlee Drive in Cincinnati. (Id.). As such, USCIS issued a receipt notice for the I-130 Petition and I-485 petition to the Kenlee Drive address. (Id).

On July 21, 2006, the receipt notice was returned to USCIS with handwritten notes on it from Shu Sheng Li and Yali Sun, the residents of the Kenlee Drive address listed on the petitions. (Id.). The notes included allegations that Tian and Smith did not live at the Kenlee Drive address, and instead lived separately on Barnum Street and Crossing Drive, respectively. (Id.). The notes also alleged the "marriage is a fraud" entered into for the purpose of obtaining an immigration benefit. (Id.). Moreover, the Kenlee Drive residents alleged Tian's attorney acted as a translator for Smith and Tian because Smith could not speak Chinese and Tian could

4

not speak English. (Id.). Further still, the notes alleged Tian's and Smith's attorney had instructed them to pretend they lived together, and to set up a join bank account. (Id.).

10 days later, Tian signed a change of address, noting her new address on Barnum Street—the address the Kenlee Drive residents had cited as Smith's residence. (Id.). On August 2, 2016, USCIS received an identical copy of the handwritten notes from Shu Sheng Li and Yali Sun. (Id.).

After the first issued notice scheduling the interview for October 19, 2006 was erroneously sent to the Kenlee Drive address, USCIS eventually interviewed Plaintiffs on May 24, 2007. (AR 3-4). At the interview, Tian needed an English translator, and both acknowledged they did not share any common language when they met or when they married. (AR 4). Tian claimed to understand a limited amount of what Smith said in English, and explained that they supplemented with sign language and hand gestures. (Id.).

They both stated they lived together at the Barnum Street address and had lived there since November 2005. (AR 4, 443-44). Despite this, Smith was unaware Tian had returned to China for over six months after they wed. (Id.). After being confronted with this fact, Smith admitted he lied, and conceded that he and Tian did not live together. (Id.). In the interview with Tian related to the instant I-130 Petition, she too admitted they did not live together, acknowledging that although she had stayed at the Barnum Street address one night, she did not want to continue doing so because it was messy and unclean. (AR 5-6). Tian and Smith never consummated their marriage, noting Smith was impotent. (AR 6).

Moreover, at the time of the May 24, 2007 interview of Tian and Smith, Tian considered Swartz to be her boyfriend. (Id.). Indeed, despite not living together at the time, Tian and Swartz were engaged in a sexual relationship. (Id.).

5

Less than two weeks after the interview, on June 5, 2007, Tian filed for divorce from Smith. (AR 4). On February 2, 2008, Tian married Swartz. (Id.).

### 1. **<u>Analysis under APA</u>**

Plaintiffs outline the standard used by USCIS to determine sham marriages. They argue a finding of marriage fraud may be sustained and visa revocation proceedings initiated in three instances: 1) a written statement from one or both parties the marriage was entered into for immigration purposes; 2) evidence money changed hands leading a reasonable person to conclude the marriage was a paid arrangement for immigration purposes; 3) extensive factual evidence that would convince a reasonable person the marriage was entered into to evade immigration laws. 9 FAM 504.2-8(a)(2). Plaintiffs then spend pages of briefing analyzing these factors, admitting there may be a reasonable inference of marriage fraud, but arguing there was not the substantial evidence of marriage fraud necessary to carry USCIS's burden. (Doc. 28, PageID 1104-12). Plaintiffs miss the mark.

First, Plaintiffs appear to assert USCIS has the burden of proof, arguing that USCIS has "failed to prove marriage fraud from the evidence in the record." (Doc. 34, PageID 1157). However, the party that challenges an agency's action bears the burden of proof. *Lewis v. Huntington Nat'l Bank*, 838 F. Supp.2d 703, 720 (S.D. Ohio 2012). Thus, it is Plaintiffs who bear the burden of proof in the instant action.[2]

Plaintiffs then fail to explain why USCIS's decision was arbitrary and capricious—the proper standard of review under the APA. Instead, Plaintiffs' arguments could be construed as challenging the weight USCIS attributed to various pieces of evidence. In other words, Plaintiffs

---

[2] Oddly enough, Plaintiffs appear to concede they did not meet their burden of proof in the visa proceedings. They state, "there is no doubt there is a serious lack of evidence of the *bona fide* nature of Tian's first marriage. Based on the record, it does appear that Tian and Smith failed to meet their burden of proof by a preponderance of the evidence with regards to their relationship before USCIS. Even further, Plaintiffs understand and acknowledge that there were certain red flags that USCS identified with regards to Tian's first marriage." (Doc. 34, PageID 1162).

appear to ask the Court to reweigh the evidence.[3] To the extent Plaintiffs indeed ask the Court to do so, it is impermissible under the applicable standard of review. *Adi,* 2011 WL 9613 at *5. For example, Plaintiffs argue attempting to consummate the marriage "should be viewed as proof the marriage was not *solely* for an immigration benefit but instead for at least one other reason." (Doc. 28, PageID 1009). (Emphasis in original). Even if Plaintiffs think USCIS should have given Tian's and Smith's attempt to consummate the marriage more weight, the Court is not permitted to substitute its judgment for that of the agency's. *Adi,* 2011 WL 9613 at *5. Accordingly, it is of no consequence that Plaintiffs view the evidence differently.

Plaintiffs also argue USCIS did not consider all of the evidence. USCIS argues its non-reliance on a specific fact in the denial does not mean the evidence was not considered. As USCIS correctly asserts, absent evidence to the contrary, the Court assumes the agency reviewed and considered the record as a whole, either directly or indirectly. *See e.g. Hickey v. Chadick*, No. 2:08-cv-824, 2009 WL 3064445, at *2 (S.D. Ohio Sept. 18, 2009) (citing *BAR MK Ranches*, 994 F.2d at 740)). "In order to overcome the presumption that the administrative record was properly designated, plaintiffs must do more than simply assert the allegedly omitted documents are relevant, were before the agency at the time of the decision, and were inadequately considered. *Pac. Shores Subdivision Cal. Water Dist. v. United States Army Corps of Eng'rs,* 448 F.Supp.2d 1, 6 (D.D.C.2006); *Sara Lee,* 252 F.R.D. at 34 (plaintiff cannot merely assert that other documents were relevant but not adequately considered)." *Id.*

Here, there is no evidence USCIS did not adequately consider the record, and Plaintiffs' assertions to the contrary, at least in certain instances, are incorrect. For example, despite

---

[3] Plaintiffs contend they are not asking the Court to reweigh the evidence, but rather to determine whether USCIS issued a proper finding of fraud given USCIS's alleged failure to fully consider certain evidence. (Doc. 34, PageID 1161). In essence, however, when Plaintiffs assert USCIS should have *fully* considered certain evidence, there is no discernable difference between the two. If certain evidence were to be considered *more fully*, the Court would indeed be giving greater weight to that evidence.

Plaintiffs contention that USCIS excludes Smith's impotency from the record, USCIS clearly included in its decision that Tian and Smith "engaged in some sexual activity, but did not have intercourse because Johnnie Smith was impotent." (AR 16-17).

Other examples cited by Plaintiffs are USCIS's failure to consider the couple's communication about their respective health issues and USCIS's failure to address Smith's statement that he transported Tian to and from school. (Doc. 28, PageID 1009-10). Plaintiffs argue such examples tend to show that despite their language barrier, they were able to effectively communicate. While Plaintiffs argue this information was not adequately considered, they provide no evidence to that effect, aside from the mere fact this information was not specifically referenced in USCIS's decision. Such assertions are not sufficient to show USCIS failed to consider the information nor does it overcome the presumption USCIS considered the record as a whole when making its determination.

Reviewing the record as a whole, the Court concludes the evidence in the record supports USCIS's conclusion and thus was reasonable, particularly under the deferential standard of review applicable here. The evidence USCIS relied upon in making its determination included: 1) Tian lied to immigration officials about living with Smith; 2) Tian lived in China for over six months after she and Smith were married, and Smith was unaware; 3) Tian and Smith were married 19 days after meeting; 4) Tian and Smith did not speak the same language when they got married, and still did not speak the same language at the interview – 18 months after their wedding; 5) Tian was dating Swartz at the time of the May 2007 interview, and was engaged in a sexual relationship with him at that time; and 6) Tian filed for divorce less than two weeks after the May 2007 interview. Considering the foregoing, there is ample evidence to support USCIS's decision and thus, its determination is not arbitrary or capricious. *Kroger Co. v. Reg'l Airport*

*Auth. of Louisville & Jefferson Cnty.*, 286 F.3d 382, 389 (6th Cir. 2002) (citing *Oakland County Bd. of Comm'rs v. U.S. Dep't of Labor*, 853 F.2d 439, 442 (6th Cir.1998).

## 2. **<u>Procedural Due Process</u>**

Having reached the above conclusion, the Court must address whether Defendants violated Plaintiffs' rights under the Due Process Clause. "The Fourteenth Amendment prohibits the government from depriving persons of 'life, liberty, or property, without due process.' U.S. Const. amend. XIV, § 1. The Due Process Clause protects aliens physically present in the United States as well as citizens. *Landon v. Plasencia*, 459 U.S. 21, 32–33, 103 S.Ct. 321; *Mathews v. Diaz*, 426 U.S. 67, 77, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976). Due process rights only attach, however, once a plaintiff asserts a liberty or property interest. *See also Almario v. Attorney General,* 872 F.2d 147, 151 (6th Cir.1989). To establish a liberty or property interest, the plaintiff must demonstrate that the Constitution or a federal or state statute grants him a protected right. *See Almario*, 872 F.2d at 151." *Bangura*, 434 F.3d at 496.

Here, Plaintiffs argue Defendants violated their constitutional right to procedural due process in two ways. First, Plaintiffs contend because USCIS used the testimony of Smith, Swartz should have been permitted to cross examine him. Second, Plaintiffs object to the consideration of the "Tip/Snitch" letter.

While it is undisputed the Constitution grants a liberty interest in a person's marriage, the Sixth Circuit has not addressed the issue of whether a beneficiary has a protected interest in a spousal visa. *See Bangura*, 434 F.3d at 496 (declining to address whether 8 U.S.C. §§ 1151 and 1154 create a property interest protected by the Due Process Clause because the issue was not before the Court). Nor has the Sixth Circuit addressed whether there exists a right to cross

examination with respect to I-130 petitions.[4]

Nevertheless, Plaintiffs urge the Court to find their inability to cross examine Smith violates due process, relying on the Ninth Circuit's opinion in *Ching*.[5] In *Ching*, the Court found that under the specific circumstances therein, due process required an opportunity to confront witnesses against her. *Id.* at 1159 (applying the factors in *Mathews v. Eldridge*, 424 U.S. 319 (1976)). For the reasons discussed more fully herein, Plaintiffs' reliance on *Ching* is misplaced.

A due process analysis necessarily requires an application of the factors in *Mathews*. However, despite asserting that the *Mathews* test applies, Plaintiffs do not engage in any further analysis of the factors outlined in *Mathews*; still, the Court would be remiss if it did not do so. The Supreme Court explained in *Mathews*, the analysis is fact specific, as "due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). In doing so, courts consider three factors to determine whether the due process provided was adequate: 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and 3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. *Id.* 424 U.S. at 335.

To begin, Defendants acknowledge the Plaintiffs' private interests (the first factor) are significant, as Tian faces possible removal.

As for the second factor, the Court finds a low risk of erroneous deprivation is present in

---

[4] There is no statutory right to cross-examination in I-130 visa adjudications. *Ching v. Mayorkas*, 725 F.3d 1149, 1154 (9th Cir. 2013).

[5] Plaintiffs also argue they should be entitled to cross examine the USCIS officers who interviewed Smith and Tian. They cite no authority in support of their position. Their argument on this point is likewise unavailing.

this case. In *Ching*, the Court found particularly troubling the fact that despite Ching presenting extensive evidence of her previous marriage being *bona fide*, her ex-husband provided a statement indicating they did not marry for love. *Id.* at 1158. Thus, because the Court was unable to determine whose story was credible, due process required an evidentiary hearing.

The circumstances in *Ching* are inapposite to those presented here. First, unlike the Sixth Circuit, the Ninth Circuit has expressly found a petitioner has a constitutionally protected liberty interest in her marriage, and a protected property interest in a spousal visa petition, giving rise to due process protections with respect to the adjudication of such petitions. *Ching*, 725 F.3d at 1155-56. Moreover, the facts in this case are distinguishable. Here, Smith did not say their marriage was fraudulent; actually, he said quite the opposite. And Plaintiffs have not provided any explanation as to how cross examining Smith would be valuable to the adjudication of the petition nor have they explained how cross examination would change the outcome of the proceedings. Indeed, the record is replete with evidence Tian's and Smith's marriage was not *bona fide*, and despite numerous chances to provide evidence to rebut the same, Tian has failed to do so.

Finally, the Court finds the third factor tips in favor of Defendants. This factor essentially asks the Court to assess the public interest. Defendants argue Plaintiffs request would financially and administratively burden the government. Plaintiffs counter that USCIS is self-funded through fees collected in conjunction with immigration applications. They argue if funding is not available, USCIS can increase filing fees. Plaintiffs fail to explain, however, how increased filing fees support the public interest, considering additional costs would come out of the pockets of applicants. Moreover, to allow cross examination in such cases, particularly where the risk of erroneous deprivation is low, wastes scarce administrative resources.

Plaintiffs also take issue with the "Tip/Snitch" letter being considered for two reasons: 1) The NOID failed to indicate the document is not notarized and that it is unsigned; and 2) Swartz did not receive a copy of the letter despite requesting one. However, Plaintiffs fail to recognize the two pieces of information ascertained from the letter—that Tian and Smith did not live together and they did not speak the same language—were corroborated by other evidence. Tian and Smith both admitted they did not live together at the Barnum Street address. And USCIS knew Tian and Smith did not speak the same language as Tian needed an interpreter for the May 2007 interview. Thus, the risk of erroneous deprivation is low, and additional procedural safeguards would not have proved valuable.

Having undertaken an analysis of the factors set forth in *Mathews*, the Court declines to forge new legal ground and find a constitutionally protected property interest with respect to the adjudication of spousal visa applications. While there may be an occasion to do so, in this case, the Court finds the procedures undertaken in this matter comported with due process and thus, additional safeguards were not necessary. Accordingly, even assuming *arguendo* a constitutionally protected property right exists, Plaintiffs are not entitled to the relief requested.

## III. CONCLUSION

Consistent with the foregoing, Defendants' Motion for Summary Judgment (Doc. 29) is **GRANTED** and Plaintiffs' Motion for Summary Judgment (Doc. 28) is **DENIED**.

**IT IS SO ORDERED.**

                                                    s/Michael R. Barrett
                                                   Michael R. Barrett, Judge
                                                   United States District Court